IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00332-NRN

G.L.T.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff G.L.T.[1] was not disabled for purposes of the Social Security Act. AR[2] 15. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #11.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence. *See Krauser v.*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ## 10, and 10-1 through 10-17.

*Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) ("If [plaintiff] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence."). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007).

If the correct legal standards were applied and substantial evidence supports the findings of the Acting Commissioner of Social Security (the "Commissioner"), the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate

2

legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

### I. Procedural History

Plaintiff filed claims for Medicare benefits and Supplemental Security Income ("SSI") on July 21, 2020, alleging a disability onset date of May 15, 2020, and alleging disabling conditions of acquired lumbar spondylolisthesis, cervical stenosis, MRI Grade 1 spondylolisthesis, and severe carpal tunnel in her wrist and elbow. AR 313, 320–21, 352. Plaintiff's claims were initially denied on January 5, 2021, and denied again upon reconsideration on July 7, 2021. AR 113, 136, 159, 182. Plaintiff then requested a hearing by an ALJ, which was held on May 3, 2022. AR 37, 273. Following the hearing, the ALJ denied Plaintiff's disability claims on July 15, 2022. AR 14–28. On August 3, 2022, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 310–12. The Appeals Council denied review on December 21, 2022. AR 1. Plaintiff then filed this case.

### II. The ALJ's July 15, 2022 Decision

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the severe impairments of lumbar

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden

3

degenerative disc disease and L4-5 fusion surgery, cervical degenerative disc disease, right carpal tunnel syndrome, right elbow degenerative changes and lateral epicondylitis, chronic gastroesophageal reflux disease and Barrett's esophagus, varicose veins, fibromyalgia, and Achilles tendon impairments. AR 17. The ALJ also determined that Plaintiff had nonsevere impairments including visual disturbances and bilateral kidney stones, and that Plaintiff's mental impairments of generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder ("PTSD") were not severe because they did not cause more than "mild" limitation in any of the four areas of mental functioning set out in 20 CFR, Part 404, Subpart P, Appendix 1. AR 17–19.

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1. AR 19–20. Because he concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: she cannot climb ladders, ropes, or scaffolds and can no more than occasionally balance as defined in the Selected Characteristics of Occupations (SCO). She can no more than occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can frequently handle, finger, and feel with the dominant right upper extremity. She can have no exposure to extreme cold or heat and no exposure to moving mechanical parts or unprotected heights.

---

of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

4

AR 20.[4]

In determining the RFC, the ALJ considered Plaintiff's testimony regarding her symptoms, including her sitting and standing limitations related to numbness issues, difficulty holding and lifting things, fatigue, sleep issues, memory and concentration issues, anxiety, and depression; as well as two Function Reports in which Plaintiff described limitations in her ability to perform daily activities. AR 20–21, 24. The ALJ's decision does not discuss any side effects that Plaintiff may have experienced in connection with any treatment or medication. The ALJ determined that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms "are not entirely consistent with the medical evidence and other evidence in the record." AR 20–21.

The ALJ noted the fact that Plaintiff suffered injuries in a November 2016 car accident, and subsequently had lumbar fusion surgery at L4-5 on May 14, 2020. AR 21. The ALJ then discussed each of the severe impairments determined in step two and their impact on the ALJ's RFC finding, as well as the opinions of state Disability Determination Service ("DDS") physicians Dr. Jeffrey Hotlgrewe and Dr. Erin Madden, Plaintiff's spine surgeon Dr. Erik Parker, Plaintiff's primary care physician Dr. Joshua

---

[4] 20 CFR 404.1567(b) defines "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

5

Axman, chiropractor Dr. Keith Graves, State of Colorado Department of Health Care Policy and Financing disability review case developer Maggie Deitzer, DDS psychologists Dr. Douglas Hanze and Dr. Gayle Frommelt, and statements provided by Plaintiff's coworker, son, daughter, and friend. AR 21–23.

Regarding Plaintiff's mental impairments, the DDS psychologists found that Plaintiff "did not allege any mental health impairment, and . . . told her physician that she did not feel that she had clinical depression, but that she was just struggling with her situation." AR 26. They also found that Plaintiff's daily activities were limited primarily by physical pain. *Id.* The ALJ noted that the DDS psychologists' findings were consistent with "the normal psychiatric findings observed by the claimant's treating medical providers" and "the absence of significant psychological symptom complaints or mental health treatment in 2021 or 2022." *Id.* The DDS psychologists ultimately concluded that Plaintiff's mental impairments were not severe, and the ALJ found such opinions persuasive. *Id.*

The ALJ considered the findings of Dr. Parker regarding Plaintiff's work limitations. On July 10, 2020, Dr. Parker recommended that Plaintiff be completely off work for twelve weeks following the surgery, that it would be reasonable to extend her work leave to six months "if she could not restart at a light duty level," and that Plaintiff's physically demanding job may require that she "work up to full activity" in her first twelve weeks back on the job. AR 25. Dr. Parker then completed a "Med-9" form indicating that Plaintiff was "substantially precluded from employment" for six months post-surgery. *Id.* On July 21, 2020, Dr. Parker stated that for six months post-surgery, Plaintiff would not be able to lift more than ten pounds, push or pull more than ten pounds, or repetitively

6

bend or twist. *Id.* On August 5, 2020, Dr. Parker stated that the duration of these limitations was yet to be determined. *Id.* The ALJ found that Dr. Parker's opinion was not persuasive because the assigned restrictions were temporarily imposed post-surgery and did not last at least twelve months. *Id.* Dr. Parker later stated on October 20, 2020 (approximately five months post-surgery) that Plaintiff "was doing well and he cleared her to return to work," but "did not assess specific permanent work restrictions." *Id.* The ALJ found this statement generally persuasive.

Regarding step four, the ALJ found that Plaintiff's past relevant work was a combination of the jobs of bus monitor, teacher aid I or paraeducator, human resources assistant, and safety trainer, making these "composite jobs." AR 26–27 (citing Social Security Program Operations Manual System (POMS) DI 25005.020 ("The claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant.")). The VE testified that based on Plaintiff's RFC, Plaintiff was unable to perform this past combination of job duties "as she actually performed the work." AR 27. The ALJ found that it was not appropriate to determine at step four whether Plaintiff could perform a composite job because composite jobs have no corresponding job title in the Dictionary of Occupational Titles ("DOT"). *Id.*

At step five, the ALJ asked the vocational expert ("VE") "if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and [RFC] as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills," and the VE testified that such an individual could work as a paraeducator. AR 28. The VE testified that she relied on her

7

professional experience to address Plaintiff's limitations that were not covered by the DOT, including absenteeism and extra breaks. *Id.* The VE testified that "the claimant's previous work is so similar to the [job of paraeducator] that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Id.* The ALJ acknowledged that Plaintiff's "additional limitations do not allow the claimant to perform the full range of light work." *Id.* The ALJ then determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 27–28. Accordingly, Plaintiff was deemed not to have been under a disability from May 15, 2020, the alleged onset date, through the date of the ALJ's decision. AR 28.

The ALJ's decision at no point discusses chronic pain syndrome ("CPS"). However, the decision does discuss the pain that Plaintiff reported experiencing associated with various severe and non-severe impairments. The decision also discusses Plaintiff's "chronic pain" in particular, states that it is associated with cervical and lumbar degenerative disc disease, and states that certain of Plaintiff's RFC limitations are due in part to the chronic pain that she experiences. AR 22 ("Due to chronic pain from cervical and lumbar degenerative disc disease, the claimant should not lift or carry more than 20 pounds occasionally. Additionally, she can only occasionally stoop, kneel, crouch, or crawl, because these activities are likely to aggravate her chronic pain."); AR 23 ("[C]laimant's fatigue and chronic pain preclude exposure to extreme temperatures, moving mechanical parts, and unprotected heights.").

## Analysis

Plaintiff first argues that the ALJ failed to evaluate Plaintiff's medically determinable impairment of CPS, and the effects of this impairment. Second, Plaintiff argues that the ALJ failed to consider Plaintiff's psychological impairments in formulating the RFC. Third, Plaintiff argues that the ALJ failed to consider certain testimony, medical evidence, and medical opinions in formulating her RFC. Fourth, Plaintiff argues that the ALJ's finding at step five contains legal error because the ALJ adopted the VE's response to a hypothetical question that failed to include a sedentary work limitation.

The Court begins by considering Plaintiff's first argument to determine whether reversible error occurred at any step of the analysis due to the ALJ's alleged failure to evaluate Plaintiff's CPS or its effects.

## I. Step Two Consideration of Plaintiff's CPS

At step two of the review process, an ALJ must determine whether a claimant has a severe medically determinable physical or mental impairment or combination of impairments that is severe. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). If the ALJ finds that a claimant has no severe impairment, she will find that the claimant is not disabled and deny benefits. *Id.* But if the ALJ finds at least one severe impairment, she must proceed to step three analysis. *Id.* Therefore, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Id.*

Plaintiff argues that the ALJ's decision contains legal error at step two of the review process because the ALJ failed to consider (1) whether Plaintiff's diagnosed CPS was a severe or non-severe medical impairment, and (2) the mental aspects of

CPS in his consideration of whether Plaintiff's mental impairments were severe. In response, Defendant argues that because the ALJ found that Plaintiff had at least one other severe medical impairment, there is no legal error even if the ALJ failed to consider Plaintiff's CPS or other aspects of Plaintiff's mental impairments.

Here, the ALJ determined at step two that Plaintiff had severe impairments of lumbar degenerative disc disease and L4-5 fusion surgery, cervical degenerative disc disease, right carpal tunnel syndrome, right elbow degenerative changes and lateral epicondylitis, chronic gastroesophageal reflux disease and Barrett's esophagus, varicose veins, fibromyalgia, and Achilles tendon impairments. Accordingly, because the ALJ found that Plaintiff had at least one severe medically determinable physical or mental impairment and therefore proceeded to step three, it is not reversible error that the ALJ failed to discuss Plaintiff's CPS or the mental aspects of Plaintiff's CPS and fibromyalgia.

## II. Consideration of Plaintiff's CPS in Formulating RFC

After determining that a claimant has a severe medically determinable impairment or combination of impairments at step two, and subsequently determining that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 at step three,[5] the ALJ must determine the claimant's physical

---

[5] Here, although Plaintiff generally argues that the ALJ failed to consider all of Plaintiff's severe and non-severe medically determinable impairments "throughout the disability determination process" (Dkt. #12 at 14), Plaintiff does not specifically argue that an error occurred at step three. Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet *all* of the specified medical criteria' contained in a particular listing." *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001)

and mental RFC. A claimant's RFC "is the most [she] can do despite [her] limitations," and "is based on all the relevant evidence, including a claimant's credible allegations of pain." *Rivera v. Comm'r, SSA*, No. 22-1026, 2022 WL 17333068, at *5 (10th Cir. Nov. 30, 2022) (citing 20 C.F.R. §§ 404.1545, 404.1529). The ALJ must consider both severe and non-severe impairments in formulating the RFC. *Holgersen v. Comm'r, Soc. Sec. Admin.*, No. 20-CV-00668-MSK, 2021 WL 2910655, at *5 (D. Colo. July 12, 2021). The assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). When evaluating a claimant's symptoms, including pain,

> [t]here must be objective medical evidence . . . that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a).

Plaintiff argues that the ALJ's decision contains reversible error because the ALJ failed to consider Plaintiff's uncontroverted CPS diagnosis and the effects of that impairment in formulating the RFC. Plaintiff argues that such a consideration likely would have changed the ALJ's perception of Plaintiff's statements about "the intensity, persistence, and limiting effects" of her pain, as well as the mental aspects of the diagnosis. Dkt. #12 at 2. Defendant argues that the ALJ did consider Plaintiff's CPS and its effects because he stated that he considered the "entire record" and "all symptoms."

---

(quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). Accordingly, the Court moves onto the next part of the analysis in which error is alleged—formulation of the RFC.

11

Dkt. #13 at 9 (quoting AR 20). Defendant further argues that the ALJ clearly considered Plaintiff's pain and chronic pain because it was discussed it at length in his decision, and the ALJ explicitly stated that some of the limitations in Plaintiff's RFC were "[d]ue to chronic pain from cervical and lumbar degenerative disc disease" and put in place to avoid aggravating her "chronic pain." AR 22. Defendant argues that Plaintiff fails to point to any medical records reflecting any additional pain symptoms not considered by the ALJ. *Id.*

Here, the ALJ's decision clearly discusses Plaintiff's reported pain and chronic pain, and cites chronic pain as a partial basis for some of the RFC limitations. However, as evidenced by 20 C.F.R. § 404.1529(a), consideration of a diagnosis is not the same as consideration of a symptom. *See also Bakalarski v. Apfel*, 131 F.3d 151 (10th Cir. 1997) (holding that CPS is "capable of *producing* disabling pain" (emphasis added)); *Howard v. Berryhill*, No. 17-cv-00276-RBJ, 2017 WL 5507961, at *6 n.4 (D. Colo. Nov. 17, 2017) (declining to interpret "passing references to 'pain'" in the ALJ decision "as the ALJ's consideration of [plaintiff's] chronic pain syndrome"). The ALJ's decision indicates that the ALJ employed this reasoning in his decision by considering Plaintiff's reported pain symptoms and weighing them against her impairments, but did not consider CPS as one of those impairments. *See* AR 20 ("it must first be determined whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms. . . . [W]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if

the claimant's symptoms limit the ability to do work-related activities."). Had the ALJ considered and affirmatively discussed Plaintiff's CPS as an impairment, he may have determined that it would be reasonable to expect that Plaintiff's CPS produced her pain symptoms, or that a CPS diagnosis substantiated Plaintiff's statements about the intensity, persistence, or limitations caused by her pain. *See Martinez v. Kijakazi*, No. 1:20-cv-00991-WJ-KRS, 2022 WL 214539 (D.N.M. Jan. 25, 2022) (report and recommendation) (where ALJ considered subjective symptom evidence of the plaintiff's chronic pain, but failed to discuss claimant's chronic pain syndrome anywhere in the decision, the court "cannot say that the ALJ properly evaluated [p]laintiff's chronic pain condition as one 'that could reasonably be expected to produce' the associated pain that she alleges as required under SSA policy"). For example, when addressing two Function Reports submitted by Plaintiff, the ALJ concluded that although Plaintiff reported an increase in back pain after driving long distances back and forth to Pueblo on multiple occasions to help her mother, the fact that Plaintiff could do these activities at all meant that her "level of physical activity . . . is much higher than she described in her testimony." AR 24. If the ALJ had considered Plaintiff's CPS, he may have given more credit to Plaintiff's statement about her back pain, which could have impacted the ALJ's conclusions about Plaintiff's activity level.

      The Court is unable to determine whether the ALJ considered Plaintiff's CPS apart from her reported symptoms of pain, as required by the regulations. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon."). "A legal error is harmless if, when following the correct

analysis, no reasonable fact finder could determine a different conclusion." *Poole v. Berryhill*, No. 17-cv-02398-MEH, 2018 WL 3323165, at *8 (D. Colo. July 6, 2018) (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005)). A reasonable factfinder could determine that Plaintiff's uncontroverted CPS diagnosis, including the mental and psychological aspects of the diagnosis, could support greater RFC limitations. Accordingly, the Court concludes that the ALJ decision must be reversed and remanded.

### III.   Remaining Issues

The Court "address[es] only so much of Plaintiff's arguments as are sufficient to require reversal." *See Cross v. Colvin*, 25 F. Supp. 3d 1345, 1348 n.1 (D. Colo. 2014). The Court expresses no opinion as to Plaintiff's remaining arguments, and neither party should take the Court's silence as implied approval or disapproval of the arguments. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (reversing and remanding after concluding the ALJ did not apply the correct legal standards in considering a treating physician's opinion, and declining to consider remaining issues raised by the claimant "because they may be affected by the ALJ's treatment of this case on remand"). The Court also does not suggest a result that should be reached on remand; rather, the Court encourages the parties, the ALJ, and the Commissioner on remand to consider fully and anew the evidence and all issues raised. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

**Conclusion**

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

Dated this 19th day of December, 2023.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge